UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| EVA MORROW,<br><br>               Plaintiff,<br>    v.<br><br>WELLS FARGO BANK, et al.,<br><br>               Defendants.<br>_____/ | No. C 12-03045 LB<br><br>**ORDER DECLINING TO RULE ON DEFENDANTS' PENDING MOTION TO DISMISS AND REMANDING ACTION BACK TO ALAMEDA COUNTY SUPERIOR COURT**<br><br>[Re: ECF Nos. 1, 5, 6, 18] |

## I. INTRODUCTION

Plaintiff Eva Morrow filed suit against Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Cal-Western Reconveyance Corporation ("Cal-Western") in Alameda County Superior Court for alleged misconduct in relation to those entities' foreclosure on her property. *See* Notice of Removal, ECF No. 1 at 2.[1] Wells Fargo removed the action to this court, and now it and Cal-Western move to dismiss Mr. Morrow's First Amended Complaint and for an order expunging a *lis pendens*. Notice of Removal, ECF No. 1; Motion to Dismiss, ECF No. 5; Motion to Expunge, ECF No. 6; Joinder, ECF No. 18. Upon consideration of the papers submitted, the court declines to rule on the pending motions and instead **REMANDS** the action back to Alameda County Superior Court because the

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

C 12-03045 LB
ORDER

court lacks subject-matter jurisdiction over it.[2]

## II. BACKGROUND

### A. Substantive Facts

The relevant facts are taken from Ms. Morrow's First Amended Complaint and certain public records of which the court takes judicial notice.[3] On or around May 7, 2007, Ms. Morrow borrowed

---

[2] Pursuant to this district's Civil Local Rule 7-1(b), the court finds this matter suitable for determination without oral argument and vacates the November 15, 2012 hearing.

[3] Wells Fargo asks the court to take judicial notice of the following documents: (1) a deed of trust that was recorded in the Official Records of Alameda County on May 15, 2007 and identified as Document Number 2007187570; (2) a letter, dated November 19, 2007, from Nicholas Dyer, Assistant Regional Director, Office of Thrift Supervision to John Stoker, Vice President and Assistant General Counsel, Wachovia Corporation confirming that World Savings Bank changed its name to Wachovia Mortgage, FSB; (3) an official certification of the Comptroller of the Currency confirming Wachovia Mortgage, FSB's conversion to a national bank with the name Wells Fargo Bank Southwest, N.A., and Wells Fargo Bank Southwest, N.A.'s merging with and into Wells Fargo Bank, N.A.; (4) a notice of default that was recorded in the Official Records of Alameda County on January 3, 2011 and identified as Document Number 2011001548; (5) a trustee's deed upon sale that was recorded in the Official Records of Alameda County on March 7, 2012 and identified as Document Number 2012080467; and (6) certificate of corporate existence, dated April 21, 2006, of the Office of Thrift Supervision for World Savings Bank. Request for Judicial Notice ("RJN"), Exhs. A-F, ECF No. 5-1.

The court may take judicial notice of matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); *see* Fed. R. Civ. P. 201(d). Because the deed of trust, notice of default, and trustee's deed upon sale are public record, the court may take judicial notice of the undisputed facts contained in them. *See Hotel Employees & Rest. Employees Local 2 v. Vista Inn Mgmt. Co.*, 393 F. Supp. 2d 972, 978 (N.D. Cal. 2005); Fed. R. Evid. 201(b); *see also Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 264-67 (2011). And other courts have taken judicial notice of documents identical or similar to the November 19, 2007 letter, the certification of the Comptroller of the Currency, and the certificate of corporate existence. *See Ibarra v. Loan City*, 09-CV-02228-IEG (POR), 2010 U.S. Dist. LEXIS 6583, 2010 WL 415284, at *3 (S.D. Cal. Jan. 27, 2010) (finding judicial notice of documents related to defendant's status as an operating subsidiary of a federal savings association proper); *Gens v. Wachovia Mortgage Corp.*, No. CV10-01073 JF (HRL), 2010 U.S. Dist. LEXIS 54932, 2010 WL 1924777, at *2 (N.D. Cal. May 12, 2010) (taking judicial notice of a letter issued by the Office of Thrift Supervision confirming World Savings Bank's request to change its name to Wachovia Mortgage, FSB); *Biggins v. Wells Fargo & Co.*, No. 09-01272, 266 F.R.D. 399, 2009 U.S. Dist. LEXIS 64620, 2009 WL 2246199, at *4 (N.D. Cal. July 27, 2009) (taking judicial notice of an order from the Office of Thrift Supervision).

$704,000.00 from World Savings Bank, FSB pursuant to a deed of trust and a promissory note. First Amended Complaint ("FAC"), ECF No. 1 at 13, ¶ 19; Request for Judicial Notice ("RJN"), ECF No. 5-1 at 5. She used the money to purchase property at 7260 Homewood Drive, Oakland, California. FAC, ECF No. 1 at 10, 13, ¶¶ 2, 19; RJN, ECF No. 5-1 at 6. The loan was secured by the deed of trust, World Savings Bank was named as the beneficiary of the deed of trust, and Golden West Savings Association Service Company was named as the trustee. FAC, ECF No. 1 at 13, ¶ 19; RJN, ECF No. 5-1 at 6.

On or around November 19, 2007, World Savings Bank changed its name to Wachovia Mortgage, FSB. RJN, Exh. B, ECF No. 5-1 at 23; *see* FAC, ECF No. 1 at 11, ¶¶ 8-10. And on or around November 1, 2009, Wachovia Mortgage, FSB converted to a national bank named Wells Fargo Bank Southwest, N.A., which then merged with and into Wells Fargo Bank, N.A. RJN, Exh. C, ECF No. 5-1 at 25; *see* FAC, ECF No. 1 at 11, ¶¶ 8-10. Thus, Wells Fargo apparently became the beneficiary of the deed of trust. *See* FAC, ECF No. 1 at 13-14, ¶¶ 19, 22.

In or around April 2009, Ms. Morrow "became ill and her financial circumstances changed in such a way that she was unable to stay current on her monthly loan payment." FAC, ECF No. 1 at 15, ¶ 25. She requested that her loan be modified so she could avoid losing her property through foreclosure. *Id*. Wells Fargo (and/or Wachovia) "offered to discuss [her] financial circumstances with [her] to explore ways for [her] to avoid foreclosure." *Id*. at 16, ¶ 26. Ms. Morrow then "submitted a loan modification application to Wells Fargo Bank in reasonable reliance of the written representations made by Wells Fargo and the verbal representations made by agents and[/]or employees of Wells Fargo, that Wells Fargo would reasonably and in good faith consider her loan modification application and would not sell the subject property in foreclosure in a foreclosure sale, while Wells Fargo and[/]or its agents and[/]or employees were considering and[/]or evaluating her loan modification application." *Id*. at 16, ¶ 28. Despite Wells Fargo's (and/or Wachovia's) offer to discuss the situation with Ms. Morrow, Wells Fargo (and/or Wachovia and/or World Savings Bank)

---

Ms. Morrow has not objected to Wells Fargo's request, nor has she challenged the authenticity of the attached documents. Accordingly, the court takes judicial notice of them.

failed to make a good faith and reasonable effort to discuss her financial circumstances, to avoid the sale of her property, and to contact her regarding the status of her loan modification application. *See id.* at 16-17, 30-36, ¶¶ 29, 77.

On or around January 3, 2011, Cal-Western, acting as trustee[4], mailed a notice of default to Ms. Morrow and recorded it in the official records of Alameda County. *Id.* at 10-12, 30, ¶¶ 4, 11, 76; RJN, Exh. D, ECF No. 5-1 at 27-29. After much effort and numerous, often conflicting, requests from Wachovia and Wells Fargo employees, Ms. Morrow completed her loan modification application and submitted the necessary documents to Wells Fargo on January 6, 2012. *See* FAC, ECF No. 1 at 30-36, ¶ 77.

On March 1, 2012, and apparently before Wells Fargo provided Ms. Morrow with an answer regarding her loan modification application, Cal-Western conducted a trustee's sale and sold Ms. Morrow's property to Wells Fargo Home Mortgage, which is a division of Wells Fargo. *Id.* at 10, 30-37, ¶¶ 4, 77-78; RJN, Exh. E, ECF No. 5-1 at 31-32. Cal-Western then recorded a trustee's deed upon sale in the official records of Alameda County on March 7, 2012. RJN, Exh. E, ECF No. 5-1 at 31.

## B. Procedural History

Ms. Morrow instituted this action in Alameda County Superior Court on April 16, 2012. *See* Notice of Removal, ECF No. 1 at 2. Ms. Morrow filed a First Amended Complaint—the operative complaint here—the next day. FAC, ECF No. 1 at 9-46. She names as defendants Wells Fargo and Cal-Western. *See id.* at 9.[5] She brings the following causes of action against "all defendants": (1)

---

[4] Although no party submitted a notice of substitution of trustee showing that Cal-Western took over as trustee from Golden West Savings Association Service Company, Ms. Morrow alleges that she is "informed and believes" that Cal-Western is the trustee. *See* FAC, ECF No. 1 at 11-12, ¶ 11.

[5] Although Ms. Morrow includes "Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A." as a defendant in the caption of her First Amended Complaint, Ms. Morrow does not mention Wells Fargo Home Mortgage in her allegations. *See generally* FAC, ECF No. 1 at 9-46. Instead, she only refers to Wells Fargo Bank, N.A. *See generally id.* For this reason, the court considers Wells Fargo Bank, N.A. to the only Wells Fargo-related entity to be a defendant to this action.

C 12-03045 LB
ORDER
4

intentional misrepresentation; (2) negligent misrepresentation; (3) violation of California Civil Code §§ 2923.5 and 2924; (4) negligent infliction of emotional distress; (5) violation of California Business and Professions Code § 17200 et seq.; (6) breach of fiduciary duty; and (7) quiet title. *See id.* at 9-46. All of these claims arise under California law.

On June 13, 2012, Wells Fargo removed the action to this court, claiming diversity jurisdiction. Notice of Removal, ECF No. 1; *see* 28 U.S.C. § 1332. Wells Fargo moved to dismiss Ms. Morrow's First Amended Complaint and for an order expunging a *lis pendens*. Motion to Dismiss, ECF No. 5; Motion to Expunge, ECF No. 6. After being served with the complaint, Proof of Service, ECF No. 16, Cal-Western joined Wells Fargo's motion to dismiss, Joinder, ECF No. 18.

All parties have consented to the undersigned's jurisdiction. Consent (Wells Fargo), ECF No. 7; Consent (Ms. Morrow), ECF No. 9; Consent (Cal-Western), ECF No. 19.

### III. DISCUSSION

**A. Subject-Matter Jurisdiction**

At the outset, the court must examine whether it has subject-matter jurisdiction over this action. Even in the absence of a motion to remand, the court has an obligation to ensure that subject-matter jurisdiction exists prior to its review of an action's merits. *See Valdex v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004). And even though a motion to remand was not filed, Ms. Morrow and Wells Fargo did, in fact, offer competing arguments in this regard in the briefing on Wells Fargo's motion to dismiss. *See* Opposition, ECF No. 10 at 3-4; Reply, ECF No. 12 at 8-12.[6] Cal-Western chose not to mention this issue in its joinder to Wells Fargo's motion to dismiss. See Joinder, ECF No. 18.

Federal courts are of limited jurisdiction, having subject matter jurisdiction only over matters authorized by the Constitution and Congress. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S.

---

[6] Wells Fargo notes in its reply that Ms. Morrow raised the issue of the court's subject-matter jurisdiction in its opposition to Wells Fargo's motion to dismiss, rather than through a formal motion to remand. Reply, ECF No. 12 at 7. Given the court's obligation to review, *sua sponte*, whether subject-matter jurisdiction exists, and given that both Mr. Morrow and Wells Fargo have had the opportunity to offer argument on this issue, the court will address it here.

1   375, 377 (1994).  Wells Fargo, a citizen of South Dakota[7], removed this action from California state
2   court on basis of diversity jurisdiction.  Notice of Removal, ECF No. 1; *see* 28 U.S.C. § 1332.
3   Diversity jurisdiction requires all plaintiffs to have different citizenship from all defendants and that
4   the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332; *Owen Equip. & Erection Co. v.*
5   *Kroger*, 437 U.S. 365, 373 (1978).

6   "The strong presumption against removal jurisdiction means that the defendant always has the
7   burden of establishing that removal is proper."  *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992)
8   (internal quotations omitted).  "Courts should resolve doubts as to removability in favor of
9   remanding the case to state court."  *Id*.

10  **1. The Amount-In-Controversy Requirement**

11  To determine the amount in controversy, the court considers evidence "relevant to the amount in
12  controversy at the time of removal."  *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir.
13  2004); *see also Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1213 (9th Cir. 1998) ("[J]urisdiction
14  must be analyzed on the basis of the pleadings filed at the time of removal without reference to
15  subsequent amendments.").  When no amount is specified in the plaintiff's complaint, the removing
16  defendant has the burden of showing that the amount in controversy exceeds $75,000.  *Sanchez v.*
17  *Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

18  As it is stated in her First Amended Complaint, Ms. Morrow seeks, among other things,
19  "[g]eneral and economic damages not to exceed $70,000.00," [a] determination of the right, title,
20  and ownership interest of the subject property," and an order cancelling the deed of trust and

---

[7] That Wells Fargo is a citizen of South Dakota for diversity jurisdiction purposes does not appear to be disputed.  *See* Opposition, ECF No. 10 at 3-4 (arguing only that Cal-Western is a citizen of California and thereby destroys the complete diversity requirement).  Even so, because Wells Fargo is a national banking association incorporated in South Dakota and its articles of incorporation state that its main office is located there as well, *see* Notice of Removal, Exh. F, ECF No. 1 at 135-40, it is a citizen of South Dakota for diversity jurisdiction purposes.  *See* 28 U.S.C. § 1348 (all national banking associations are "deemed citizens of the States in which they are respectively located."); *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 313–314 (2006) ) (interpreting 28 U.S.C. § 1348 to mean that a national banking association is a citizen of the state where its articles of association designate its "main office").

C 12-03045 LB
ORDER
6

1 promissory note, reducing the principal balance owed on the promissory note, modifying the
2 existing the loan, enjoining the sale of the subject property. *See* FAC, ECF No. 1 at 44-45. Ms.
3 Morrow thus contends that the amount-in-controversy requirement is not met because she seeks
4 damages of less than $75,000. Opposition, ECF No. 10 at 4.

But Ms. Morrow does not only seek damages. As Wells Fargo correctly points out, "'[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.'" *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)). In actions to enjoin foreclosure sales, to quiet title, or to remove a cloud from title, the object of the litigation is the real estate itself. *See Chapman v. Deutsche Bank Nat. Trust Co.*, 651 F.3d 1039, 1045 n.2 (9th Cir. 2011) (citing *Garfinkle v. Wells Fargo Bank*, 483 F.2d 1074, 1076 (9th Cir. 1973); *Woodside v. Ciceroni*, 93 F. 1, 4 (9th Cir. 1899)); *Ngoc Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1028-29 (N.D. Cal. Oct. 27, 2010) ("Numerous courts have held that, where a complaint seeks to invalidate a loan secured by a deed of trust, the amount in controversy is the loan amount.") (collecting cases); *see also De Long v. Bank of America, N.A.*, No. 11–CV–06388–LHK, 2012 WL 1498868, at *4 (N.D. Cal. Apr. 27, 2012) ("[T]he amount in controversy was met because Plaintiff sought to quiet title and to cancel the Trustee's Deed upon sale for the property, which was valued at $214,000."). Here, Ms. Morrow seeks to quiet title and cancel the deed of trust and promissory note, and the value of her loan is $704,000.00, *see* RJN, Exh. A, ECF No. 5-1 at 5, and the property sold at the trustee's sale for $543,418.00, *see id.*, Exh. E, ECF No. 5-1 at 31, so under the authorities cited above, the amount-in-controversy requirement is met.

**2. The Complete Diversity Requirement**

It is undisputed that Ms. Morrow and Cal-Western both are citizens of California. *See* FAC, ECF No. 1 at 9, 11-12, ¶¶ 1, 11; Notice of Removal, ECF No. 1 at 4; *see also* Joinder, ECF No. 18 (not arguing that Cal-Western is a citizen of another state). Ms. Morrow argues that this destroys the court's diversity jurisdiction. Opposition, ECF No. 10 at 3-4. Wells Fargo counters that Cal-Western should be disregarded for diversity jurisdiction purposes because Cal-Western has been fraudulently joined in this action. Notice of Removal, ECF No. 1 at 4-5; Reply, ECF No. 12 at 8-11.

C 12-03045 LB
ORDER
7

While diversity jurisdiction under 28 U.S.C. § 1332 ordinarily requires complete diversity of the parties, removal is proper despite the presence of a non-diverse defendant when that defendant was fraudulently joined. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996); *McCabe v. Gen. Foods*, 811 F.2d 1336, 1339 (9th Cir. 1987) (a fraudulently jointed defendant will not defeat diversity jurisdiction). In the Ninth Circuit, if a plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe*, 811 F.2d at 1339. There is a strong presumption against fraudulent joinder, and a defendant who asserts it "carr[ies] a heavy burden of persuasion." *Lieberman v. Meshkin, Mazandarani*, C-96-3344 SI, 1996 WL 732506, at *2 (N.D. Cal. Dec.11, 1996) (citing *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990)). "Indeed, [a defendant] must show to 'a near certainty' that joinder was fraudulent and that 'plaintiff has *no actual intention to prosecute* an action against [that] particular resident defendant[]." *Osorio v. Wells Fargo Bank*, No. C 12-02645 RS, 2012 WL 2054997, at *2 (N.D. Cal. June 5, 2012) (quoting *Diaz v. Allstate Ins. Group*, 185 F.R.D. 581, 586 (C.D. Cal. 1998) (emphasis in original) (citing *Boyer*, 913 F.2d at 111)); *see also Lewis v. Time, Inc.*, 83 F.R.D. 455, 466 (E.D. Cal. 1979), aff'd, 710 F.2d 549 (9th Cir. 1983).

"The defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent." *Id.* A non-diverse defendant is deemed to be fraudulently joined if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned. *See Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 (9th Cir. 1989). "In order to establish that there has been no fraudulent joinder, a plaintiff need only have one potentially valid claim against a non-diverse defendant" to survive a fraudulent joinder challenge. *Knutson v. Allis-Chalmers Corp.*, 358 F. Supp. 2d 983, 993-95 (D. Nev. 2005) (collecting cases). Accordingly, a defendant seeking removal based on an alleged fraudulent joinder must do more than show that the complaint at the time of removal fails to state a claim against the non-diverse defendant. *See Burris v. AT & T Wireless, Inc.*, No. C 06-02904 JSW, 2006 WL 2038040, at *2 (N.D. Cal. July 19, 2006) (citing *Nickelberry v. DiamlerChrysler Corp.*, No. C-06-1002 MMC, 2006 WL 997391, at *1-2

(N.D. Cal. Apr. 17, 2006) (remanding action where defendant failed to demonstrate that the plaintiff would not be given leave to amend to cure the pleading deficiency regarding the alleged sham defendant)). "Remand must be granted unless the defendant shows that the plaintiff 'would not be afforded leave to amend his complaint to cure [the] purported deficiency.'" *Padilla v. AT & T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009) (quoting *Burris*, 2006 WL 2038040, at *2 ).

Wells Fargo argues that Ms. Morrow has not sufficiently alleged any claims against Cal-Western. *See* Reply, ECF No. 12 at 9-11. It is correct with respect to Ms. Morrow's claim for a violation of California Civil Code § 2923.5 and to quiet title. In *Mabry v. Superior Court*, 185 Cal. App. 4th 208 (2010), the California Court of Appeal considered section 2923.5 and persuasively reasoned that the only remedy for a violation is postponement of a foreclosure sale. *Id*. at 235 ("There is nothing in section 2923.5 that even hints that noncompliance with the statute would cause any cloud on title after an otherwise properly conducted foreclosure sale."). Courts in this district have uniformly followed *Mabry* and held that a plaintiff cannot state a claim challenging the foreclosure process where a foreclosure sale has already occurred, as it has here. *See, e.g., Garbutt v. Adamarc Financial Co., Inc.*, No. C10–05338 HRL, 2011 WL 2784548, at *2-3 (N.D. Cal. July 13, 2011); *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 877-78 (N.D. Cal. 2010); *Aguilera v. Hilltop lending Corp.*, No. C 10-0184 JL, 2010 WL 3340566, at *4-5 (N.D. Cal. Aug. 25, 2010); *Atkins v. Litton Loan Servicing, LLP*, No. C 10-0561 RS, 2010 WL 3184350, at *4 (N.D. Cal. Aug. 11, 2010). And with respect to her claim to quiet title, Cal-Western does not claim any interest in the subject property. Thus, under California law, it is "obvious" Ms. Morrow cannot now state a claim against Cal-Western for a violation of California Civil Code § 2923.5 or to quiet title. *See McCabe*, 811 F.2d at 1339.

But it not so clear with respect to Ms. Morrow's other claims. Wells Fargo argues that her other claims—claims for intentional misrepresentation, negligent misrepresentation, negligent infliction of emotional distress, violation of California Business and Professions Code § 17200 et seq., and breach of fiduciary duty and brought against "all defendants"—are subject to the heightened pleading standard under Federal Rule of Civil Procedure 9(b) because they sound in fraud. Reply,

ECF No. 12 at 9-11.[8] It does not cite any authority in support of this proposition, but because her claims do appear to be based on Defendants' foreclosure upon her property while her loan modification application was still pending, despite assurances that that would not happen, the court believes that Rule 9(b) likely applies to these claims. *See Chancellor v. OneWest Bank*, No. C 12–01068 LB, 2012 WL 1868750, at *15-16 (N.D. Cal. May 22, 2012) (applying Rule 9(b)'s heightened pleadings standard to intentional and negligent misrepresentation claims); *Long v. Hewlett-Packard Co.*, No C 06-2616 JW, 2007 WL4877691, at *3 (N.D. Cal. Dec. 21, 2006) (applying Rule 9(b)'s heightened pleading standard to allegations of fraud in support of a § 17200 claim).

It is true that Ms. Morrow's allegations primarily focus on the conduct of Wells Fargo (or of Wachovia or World Savings Bank). It also is true that her allegations concerning Cal-Western primarily focus on its role as trustee. Nevertheless, Ms. Morrow does bring all of her claims against "all defendants," including Cal-Western. And, while she does not allege it is a separate cause of action, she does allege (albeit in a conclusory fashion) that Cal-Western conspired with Wells Fargo to commit the misconduct she describes.[9] Specifically, she alleges that "Wells Fargo, and[/]or World Savings Bank, and[/]or Wachovia and[/]or Cal-Western, and[/]or Does 1 to 10, and each of

---

[8] Specifically, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Further, "a plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id*. (quoting *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (superceded by statute on other grounds)). A plaintiff must also differentiate his allegations when suing more than one defendant, especially in the context of fraud claims. *See Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011).

[9] Under California law, "[c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510–11 (1994). Liability for civil conspiracy generally requires three elements: (1) formation of a conspiracy (an agreement to commit wrongful acts); (2) operation of a conspiracy (commission of the wrongful acts); and (3) damage resulting from operation of a conspiracy. *Id*. at 511. A civil conspiracy is therefore activated by the commission of an underlying wrongful act. *Id*.

1  them or either of them, in doing the acts alleged herein conspired and[/]or acted with intent to
2  deceive [her] and to unfairly obtain title to the subject property, in violation of [her] legal and[/]or
3  equitable rights." FAC, ECF No. 1 at 17-18, ¶ 30. Ms. Morrow reiterates this point in her
4  opposition. Opposition, ECF No. 10 at 4 ("Cal[-]Western conspired with Wells Fargo to deceive
5  [Ms. Morrow]."). Under a conspiracy theory, of course, Cal-Western would be liable for the acts of
6  Wells Fargo. *See Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510–11
7  (1994).

8  But even if Ms. Morrow's allegations do not meet Rule 9(b)'s standard now, Wells Fargo has not
9  shown, as it must, that she could not re-allege them to do so. See *Padilla v. AT & T Corp.*, 697 F.
10 Supp. 2d 1156, 1159 (C.D. Cal. 2009) ("Remand must be granted unless the defendant shows that
11 the plaintiff 'would not be afforded leave to amend his complaint to cure [the] purported
12 deficiency.'") (quoting *Burris*, 2006 WL 2038040, at *2 ).  Indeed, at least one court in this district
13 has rejected Wells Fargo's fraudulent joinder argument where the plaintiff alleged that Cal-Western
14 "acted improperly as a trustee, colluded with Wells Fargo to defraud plaintiff, and benefitted from
15 the joint conspiracy." *Osorio*, 2012 WL 2054997, at *2.  In this circumstance, the court finds that
16 Wells Fargo has not carried its "heavy burden of persuasion," *Lieberman*, 1996 WL 732506, at *2,
17 to show to "a near certainty" that joinder was fraudulent and that Ms. Morrow "has *no actual
18 intention to prosecute* an action" against Cal-Western. *Diaz v. Allstate Ins. Group*, 185 F.R.D. 581,
19 586 (C.D. Cal. 1998) (emphasis in original); *see Osorio*, 2012 WL 2054997, at *2. Accordingly, the
20 court concludes that Cal-Western has not been fraudulently joined and that Wells Fargo's removal of
21 this action was improper.

22 **B. The Merits of Wells Fargo and Cal-Western's Motion to Dismiss and Wells Fargo's Motion**
23 **for an Order Expunging a *Lis Pendens***

24 Because the court concludes that it does not have subject-matter over this dispute (because there
25 is no complete diversity), the court does not address the merits of Wells Fargo and Cal-Western's
26 motion to dismiss or Wells Fargo's motion to expunge a *lis pendens*.

27 **IV.  CONCLUSION**

28 Based on the foregoing, the court declines to rule on Wells Fargo and Cal-Western's motion to

dismiss or Wells Fargo's motion to expunge a *lis pendens* and instead **REMANDS** this action back to Alameda County Superior Court. The Clerk of the Court shall close the file.

**IT IS SO ORDERED.**

Dated: November 9, 2012

_____
LAUREL BEELER
United States Magistrate Judge